IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE LOPEZ, | No. C 07-01984 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, | |
| Defendant. | |

## INTRODUCTION

In this social security appeal, this order finds that the ALJ exercised proper discretion in weighing the testimony on record and that the ALJ's partially favorable decision was supported by substantial evidence. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1. PROCEDURAL HISTORY.**

On September 3, 2003, plaintiff Jeanette Lopez applied for disability insurance benefits, alleging she was unable to work since September 10, 2002, due to right shoulder impingement and right AC joint arthritis (AR 64–66). Her application was denied both initially and upon reconsideration (AR 35–39). An administrative hearing was timely requested (AR 40).

On July 28, 2005, plaintiff had a hearing before ALJ Richard Laverdure (AR 15–20). The ALJ rendered a partially favorable decision on March 23, 2006, finding that plaintiff was

entitled to benefits between September 3, 2003, and May 17, 2004, but as of May 18, 2004, she had lost that entitlement (AR 20). Plaintiff requested administrative review (AR 10). The Appeals Council denied the request (AR 5). Plaintiff filed an action before this Court on April 9, 2007, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

**2.     TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the hearing before the ALJ, plaintiff testified that she had been under medical care since 2000 to treat pain in her neck, right shoulder, and arm (AR 245). She also testified that her arm was completely numb, prohibiting her from driving, and that her neck was immobile (AR 244). Although plaintiff indicated that surgery in 2003 gave her 25% increased mobility in her testimony, she reported continued pain, including a pinched nerve in the neck, a flare-up in the right shoulder, and radial and carpal tunnel syndrome (AR 246–247). Plaintiff stated that she had trouble writing with her right arm and an inability to move her head (AR 248). She began taking Oxycontin at night and Motrin during the day (AR 230). She also took Cymbalta and Neurontin for the pain. Plaintiff also testified that even though she returned to part-time work, she had no medical improvement in her conditions (AR 250).

**3.     MEDICAL EVIDENCE.**

The medical evidence was summarized in the ALJ's decision (AR 17–19). This order will also briefly review both plaintiff's self-reported symptoms and the findings of each physician who examined her. Due to continued right shoulder pain, plaintiff had right shoulder arthroscopic acromioplasty and arthroscopic rotator cuff repair on November 7, 2003. On November 11, 2003, Calvin Pon, M.D. examined plaintiff and diagnosed the following: (1) chronic neck pain, probably secondary to cervical disc disease; (2) history of right shoulder acromioclavicular joint arthritis with right shoulder impingement; and (3) history of bilateral carpal tunnel release in the early 1990's (AR 127). Dr. Pon also noted no restriction in standing, walking, or performing fine manipulative tasks with either hand (*ibid.*). However, Dr.

2

1 Pon reported that plaintiff should avoid all lifting, carrying, and reaching with her right upper
2 extremity (*ibid.*).

3 On March 24, 2004, treating orthopedist Kirk Jensen, M.D. noted that plaintiff was
4 totally, temporarily disabled and needed to continue with physical therapy (AR 151). Roughly
5 two months later, on May 17, Dr. Jensen reported that plaintiff "ha[d] done exceedingly well"
6 with most of the shoulder pain diminishing and her range of motion improving (AR 188).
7 Three days later, treating physician Barbara McQuinn, M.D. examined plaintiff and reported
8 that she was "Permanent and Stationary with regards to her neck and arm disabilities" and
9 "precluded from repetitive use of both arms/hands" (AR 203–204). Nonetheless, in a progress
10 report a month later in June, Dr. Jensen wrote that "[plaintiff] reports that she is doing much
11 better" (AR 186). Additionally, on January 27, 2005, Dr. Jensen wrote that plaintiff reported
12 that "she is about 75% better." Plaintiff denied giving Dr. Jensen any percentage regarding her
13 improvement at the hearing (AR 259). Plaintiff began a real estate and mortgage-banking
14 program on July 19, 2004, and started working on a part-time basis in November 2004, as a
15 loan officer (AR 250–252).

**ANALYSIS**

**1.   LEGAL STANDARD.**

18 A decision denying disability benefits must be upheld if it is supported by substantial
19 evidence and free of legal error. The claimant has the burden of proving disability. The
20 district court must "review the administrative record as a whole, weighing both the evidence
21 that supports and that which detracts from the ALJ's conclusion." "The ALJ is responsible for
22 determining credibility, resolving conflicts in medical testimony, and for resolving
23 ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation,
24 the decision of the ALJ must be upheld. Substantial evidence is "more than a scintilla," but
25 "less than a preponderance." It means "such relevant evidence as a reasonable mind might
26 accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039–1040
27 (9th Cir. 1995).

3

Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (I) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, it is the burden of the Secretary to prove that the claimant can perform other gainful work. If the ALJ chooses to use a vocational expert, hypothetical questions asked "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001)(internal citation omitted).

The use of the Medical-Vocation Guidelines, at step five is proper "where they *completely and accurately* represent a claimant's limitations" and the claimant can "perform the *full* range of jobs in a given category." Although "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids," the ALJ must first determine whether the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1101–1102 (9th Cir. 1999).

**2.     THE ALJ'S FIVE-STEP ANALYSIS**.

At step one of the analysis, the ALJ found that plaintiff did not perform substantial gainful activity from September 2002 until November 2004 (AR 16). The ALJ cutoff the period of disability at November 2004 because plaintiff's counsel failed to submit any documents showing plaintiff's income after that date (*ibid.*). Next, the ALJ found that plaintiff had severe right shoulder impingement and right AC joint arthritis, post repair (*ibid.*). At step three the ALJ found that none of plaintiff's impairments, considered separately or cumulatively, met or equaled any of the impairments listed in the Social Security regulations (*ibid.*). In step four, the ALJ found that plaintiff had the residual functional capacity as of May 18, 2004 to work lightly

4

1   and reach "frequently" (AR 19).  The ALJ then concluded that, as of May 18, 2004, plaintiff
2   was able to return to her past work (*ibid*.).

3           **3.**      **SUBSTANTIAL EVIDENCE ON RECORD.**

4           In his decision, the ALJ found at step four of the sequential evaluation process that
5   plaintiff always had the functional capacity for a range of light work, but that prior to May 17,
6   2004, she had additional non-exertional limitations that restricted her use of her dominant upper
7   arm precluding her from all work until May 17, 2004 (AR 18).  After May 17, the ALJ found
8   that the additional limitations ceased to the point that she could return to her former
9   employment (AR 19).  The ALJ based his decision off Dr. Jensen's examination on May 17,
10  2004, and the testimony of the vocational expert (AR 18–19).  The vocational expert testified
11  that someone who could reach "frequently" could perform the plaintiff's past hybrid work (AR
12  19).

13          Plaintiff now argues that the ALJ improperly accorded weight to Dr. Jensen's medical
14  report and erroneously rejected Dr. McQuinn's opinion.  In the progress report dated May 17,
15  2004, Dr. Jensen noted that plaintiff was doing "exceedingly well" (AR 188).  Plaintiff contends
16  that the statement cannot be credited because no comparison points were given by Dr. Jensen,
17  and ultimately, no opinion was rendered by him regarding plaintiff's ability to return back to
18  work.  Plaintiff's medical consultations with Dr. Jensen and her work history, however, provide
19  substantial evidence for supporting the ALJ's decision.  Dr. Jensen's reports from March 2004
20  to January 2005 show that plaintiff made significant progress in her rehabilitation over time.
21  Plaintiff went from being "totally, temporarily disabled" in March, to "exceedingly better" in
22  May, to "much better" in June, and finally "75% better" in January (AR 151, 188, 186, and
23  184).  These reports showed consistent recovery to warrant the ALJ's finding.  In addition,
24  although plaintiff claims that her disability continued past May, she was able to enroll in classes
25  in July and started working in November.  These facts only add to the substantial evidence that
26  the ALJ based his decision on.

5

1    The ALJ also exercised proper discretion in choosing to give less weight to the
2 assessment given by Dr. McQuinn.  The ALJ is trusted with "determining credibility, resolving
3 conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039.  In
4 this matter, the ALJ found Dr. McQuinn's "sit/stand option" without basis because the case
5 involved a cervical and upper extremity condition (AR 18).  Given the inconsistencies with Dr.
6 Jensen's status reports, the ALJ was well within his authority to choose to discredit Dr.
7 McQuinn's opinion, and instead, follow Dr. Jensen's.  Substantial evidence showing, the ALJ's
8 determination that the disability ended on May 18, 2004 must be upheld.

   **4.    NO OBJECTIVE EVIDENCE OF SIDE-EFFECTS.**

10   Allegations of side-effects need not be considered if no objective evidence is offered to
11 support the allegations.  *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).  For the
12 period between January 6, 2005 and April 19, 2005, plaintiff has offered no evidence, other than
13 her own statements, supporting her allegation that side-effects from the use of Cymbalta and
14 Neurontin prohibited her from working.  The ALJ properly used his discretion to find that
15 plaintiff's testimony was "not fully credible with respect to the extent of her limitations" (AR
16 18). Additionally, Dr. McQuinn's progress report on May 20, 2004 indicates that plaintiff only
17 used Neurontin "sparingly," but that it "help[ed] with sleep" (AR 201).  Plaintiff has offered no
18 objective proof to demonstrate how the alleged side-effects impacted her work during the day.
19   Plaintiff next argues that the ALJ failed to consider the side-effects caused by her use of
20 Oxycontin.  Plaintiff, however, only took Oxycontin at night to sleep and took Motrin during
21 the day for pain.  Plaintiff has not shown how the side-effects from a drug she took at night to
22 sleep impacted her ability to work the next day.  Plaintiff argues that because she wasn't able to
23 take Oxycontin during the day, due to the side-effects, that she experienced more pain, thereby
24 impacting her ability to work.  Nonetheless, plaintiff has offered no evidence from Dr.
25 McQuinn or any other doctor to demonstrate that her pain was so debilitating that it prohibited
26 her from working.  Accordingly, this order finds that the ALJ did not err in failing to consider
27 plaintiff's allegations of side effects.

6

**5.    PLAINTIFF'S DISCREDITED PAIN TESTIMONY.**

An ALJ is not required "to believe every allegation of disabling pain," but he should give specific reasons for discrediting such an allegation. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In the instant action, the ALJ found plaintiff's testimony to be "somewhat questionable" (AR 17). He based this opinion on the inconsistencies between Dr. Jensen's progress report, noting that plaintiff was doing 75% better, and plaintiff's testimony (AR 18). Although plaintiff denied ever giving any such assessment and claimed that Dr. Jensen was generally more optimistic with regards to her condition (*ibid.*), the ALJ was entitled to choose to give more weight to the progress report. The ALJ also noted that plaintiff exaggerated her prior income level before becoming disabled after comparing her testimony to her actual wage reports from her employment (AR 16).

The ALJ's decision also indicates that plaintiff's testimony regarding her pain was not ignored, and was ultimately one of the factors in awarding disability benefits from September 10, 2002, to May 17, 2004. The decision found plaintiff's testimony "generally credible" with respect to her allegations of medical impairments, but "not fully credible with the extent of her limitations" due to the inconsistencies in evidence, including plaintiff's own testimony (AR 18). Thus, it was within the ALJ's authority to choose to discredit plaintiff's testimony based on the contrary evidence on record that was specifically highlighted by the ALJ.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 5, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE